UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD OUTLAW,<br><br>             Plaintiff,<br><br>     v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the<br>Social Security Administration,<br><br>             Defendant.<br>_____ | NO. CV 04-00976 MAN<br><br>MEMORANDUM OPINION<br><br>AND ORDER |

Plaintiff filed a Complaint on February 17, 2004, seeking review of the decision of the Social Security Commissioner ("Commissioner") denying his application for supplemental security income benefits ("SSI"). 42 U.S.C. § 1383(c)(3). On March 25, 2004, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on September 23, 2004, in which: Plaintiff moves for an order reversing the Commissioner's decision denying benefits and remanding the case; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed his application for SSI on December 12, 2001. (Administrative Record ("A.R.") 39-45.) Plaintiff claims to have been disabled since January 1, 1991, due to complications arising from a gunshot wound and due to schizophrenia. (A.R. 39, 43.) He has no past relevant work experience. (A.R. 16.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. (A.R. 26-30.) On May 6, 2003, Plaintiff, who was represented, appeared personally and testified at a hearing before Administrative Law Judge ("ALJ") John Kent. (A.R. 205-17.) On October 8, 2003, the ALJ denied Plaintiff's request for SSI, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision. (A.R. 8-16, 3-5.)

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

**A.   Plaintiff's Medical Evidence**

In support of his claimed mental impairment, Plaintiff submitted records from his treating mental health professionals at the California Department of Corrections ("CDC"), the Los Angeles Harbor/UCLA Medical Center, and the Downtown Mental Health Center ("DMHC").

Plaintiff submitted records from the CDC for the period from August 1990, to September 1996. (A.R. 110-42.) In a record dated May 14, 1994, Dr. M. Lewengood, chief medical officer, and Dr. Birnbaum, a

consulting psychiatrist, scored Plaintiff as having a Global Assessment of Functioning ("GAF") score of 35,[1] and diagnosed him as follows: "R/O [rule out] Schizophrenia. R/O Pervasive Develop. Disorder. R/O Organic Brain Syndrome." (A.R. 130.)

In a June 24, 1994 Psychological Intake Evaluation, Dr. Shirley Stack, a CDC staff psychologist, diagnosed Plaintiff with: 1) malingering (provisional); 2) organic mental disorder, not otherwise specified; 3) schizophrenia, undifferentiated, chronic; 4) polysubstance dependence; 5) antisocial personality disorder; and 6) mild mental retardation. (A.R. 125.) Dr. Stack assessed Plaintiff with a GAF of 60, if Plaintiff was malingering, and a GAF of 35, if Plaintiff was not malingering.[2] (*Id.*) She noted that Plaintiff was then incarcerated for reckless driving, driving under the influence, and trying to evade arrest, and had other prior offenses including forcible rape, attempted sodomy, unlawful sexual intercourse with a minor, lewd and lascivious crimes against children, and numerous parole violations, as well as juvenile convictions for assault, grand theft auto, battery, and rape. (A.R. 123.) Dr. Stack further noted that Plaintiff reported he: had been physically abused by his father; had a lengthy history of substance

---

[1] A GAF of 31 to 40 shows "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994) ("DSM-IV").

[2] A GAF of 51-60 shows "moderate symptoms, such as those which would affect speech, or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV at 32.

abuse, including cocaine, PCP, and alcohol; and had taken psychiatric medications, including Artane, Haldol, Navane, and Sinequan.  (A.R. 123-24.)  Plaintiff reported symptoms of hearing voices, and believed that he had been shot by people who allegedly thought he had assassinated John F. Kennedy.  (A.R. 124.)

In a July 28, 1994 report, Dr. Ralph Allison, a CDC staff psychiatrist, found that Plaintiff has a "severe mental disorder." According to Dr. Allison's report, Plaintiff reported that, several years earlier, he heard voices telling him that he "was a loser in life," as well as experienced blackouts.  (A.R. 119-20.)

On March 29, 1996, Dr. Dennis Payne, a CDC psychiatrist, diagnosed Plaintiff as follows:  "Psychotic disorder NOS [not otherwise specified] vs. malingering.  History of poly-substance abuse.  Rule out borderline intellectual functioning."  Dr. Payne assessed Plaintiff with a GAF of 60.  (A.R. 114-15.)

In addition, Plaintiff submitted records from the Los Angeles Harbor/UCLA Medical Center for the period from September 1993, to November 1993.  (A.R. 72-109.)  These records note Plaintiff's substance abuse.  (A.R. 77 -- October 22, 1993 progress notes stating that Plaintiff reported "I have a 'hang-over' from last night"; 85 -- 1993 progress notes stating that Plaintiff reported "I took 4 Tylenol with codeine and 3 Motrin to kill my pain," and that Plaintiff was advised that the amount of medication is considered over the amount prescribed; 100 -- September 11, 1993 emergency room notes stating that Plaintiff was "ETOH"; and 107 -- September 18, 1993 laboratory tests showing that

Plaintiff tested positive for alcohol.)

Plaintiff submitted records from the DMHC for the period from December 2001, to June 2003. (A.R. 165-83.) In a December 11, 2001 Adult Initial Assessment, Dr. Wright diagnosed Plaintiff with major depressive disorder, recurrent and severe, and post traumatic stress syndrome; he assessed Plaintiff with a GAF of 35. (A.R. 183.) Dr. Wright noted that Plaintiff reported he had been hospitalized for psychiatric reasons in Norwalk, and had attempted suicide several times. (A.R. 179.) In progress notes dated May 5, 2003, Plaintiff was diagnosed with psychosis, and reported that he did not drink or use drugs. (A.R. 168.) These records also show that Plaintiff's psychiatric medications have included Mellaril, Cogentin, Haldol, Sinequan, Zyprexa, Doxepin, and Seroquel. (A.R. 170, 180.)

On August 29, 2003, Dr. Margaret Donahue, a psychologist who examined Plaintiff at the request of the Commissioner, diagnosed Plaintiff as follows: "1. Malingering. 2. Rule out paranoid schizophrenia. 3. Rule out major depression"; "[a]t least borderline intellectual ability based on the clinical presentation"; and psychosocial stressors of a "[h]istory of convicted felony arrest, currently completed parole, registered sex offender." (A.R. 197.) Dr. Donahue noted that Plaintiff reported he was required to be in a special housing unit while incarcerated. (*Id.*) She opined that "[i]f this is accurate, then it is important to know whether or not [Plaintiff] can be assigned to not work with the general public, or not work closely with other people, but be under general supervision." (*Id.*) Dr. Donahue also indicated "[t]here are some questions about whether or not

[Plaintiff] is able to adequately interact with other people," and "[i]f he is a sex offender[,] then he should not work with his potential victim class unsupervised." (*Id.*)  However, Dr. Donahue noted that she did not believe Plaintiff was unable to follow simple one or two-step instructions, as he presented, and she could not assess Plaintiff's memory function due to his "malingering memory." (A.R. 195, 197.)  In a corresponding Mental Assessment completed on August 29, 2003, Dr. Donahue noted no limitations in understanding and memory and sustained concentration and persistence, but did note that Plaintiff was "slightly" or "markedly limited" in certain categories of social interaction and adaptation. (A.R. 199-204.)  She explained that "[Plaintiff] was clearly malingering on the memory and cognitive impairment," but that he has a "long-standing criminal history and is quite sociopathic." (A.R. 203.)

On April 2, 2002, Dr. C. H. Dudley, a state agency physician, submitted a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (A.R. 143.)  Dr. Dudley noted that there was "insufficient evidence" to render an opinion on Plaintiff's "medical disposition"; the form's check-off boxes are otherwise incomplete. (A.R. 143-55.)

**B.   The ALJ's Decision**

At the May 6, 2003 hearing, the ALJ sought testimony from Plaintiff regarding his claimed impairments. (A.R. 205-17.)

6

In his October 8, 2003 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of January 1, 1991. (A.R. 15.) The ALJ found that: Plaintiff is a "younger individual" pursuant to 20 C.F.R. § 416.965; has a "limited education" pursuant to 20 C.F.R. § 416.964; and has no past relevant work. (A.R. 16.) Based on "medical evidence indicat[ing] that [Plaintiff] has had significantly limited residuals of gunshot wounds," the ALJ found that Plaintiff has a "severe" impairment. (A.R. 14.) The ALJ concluded, however, that Plaintiff does not have an impairment or combination of impairments listed in, or medically equivalent to an impairment listed in, Appendix 1, Subpart P, Regulation No. 4. (A.R. 16.) The ALJ found that Plaintiff's testimony regarding his impairments was not credible. (*Id.*) In addition, the ALJ found that Plaintiff has the residual functional capacity: to perform work at the "medium" level; to stand and/or walk six hours in an eight-hour workday; and to sit six hours in an eight-hour workday.[3] (*Id.*) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial

---

[3] "Medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 416.967(c); 404.1567(c).

evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Here, Plaintiff alleges one issue. Plaintiff contends that the ALJ erred by failing to consider the records regarding his mental health treatment and, thus, improperly considered Plaintiff's mental impairment as not "severe." (Joint Stip. at 5.)

**A.   The ALJ's Conclusion That Plaintiff's Alleged Mental Impairment Was Not "Severe" Constitutes Error.**

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on [a claimant's] ability to work.'" Smolen, 80 F.3d at 1290 (citing Social Security Ruling 85-28; Yuckert v. Bowen, 841 F.2d 303 (9th Cir. 1988)); 20 C.F.R. § 416.921 ("[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); *see also* Bustamante v. Massanari, 262 F.3d 949, 955-56 (9th Cir. 2001)(ALJ's finding that claimant's mental impairment was not severe was not supported by substantial evidence, because every mental health professional who examined claimant found significant mental problems). The "severity" requirement is merely "a *de minimis* screening device to dispose of groundless claims." Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001)(citing Smolen, 80 F.3d at 1290). "[A] claim may be denied at step two only if . . . a finding [that the relevant impairments are not medically severe] is *clearly established by medical evidence*." Social Security Ruling 85-28 (emphasis added).

In discussing Plaintiff's claimed mental impairment, the ALJ stated:

> The record reflects a significant history of mental health treatment, but the credibility of [Plaintiff's] complaints seems very doubtful. In particular, treatment records

9

persistently show diagnoses of malingering (e.g. Exhibits 2F/15, and 2F/6). Notably, in mental health treatment records dated June 1994, a clinician observes, "the record indicates that [Plaintiff] has a long history of impulsive, irresponsible and criminal behavior, and significant substance abuse. He presented in a child-like manner with inappropriate affect, auditory hallucinations, and fixed delusion with a theme that has been voiced to previous examiners, and seems to have limited effect on his functioning. He is not receiving any psychiatric medications. He was given the Reys Memory Test for malingering and scored in the range indicative of malingering. . . Taken together, his demeanor, past criminal history, and seemingly poor cognitive functioning, without any significant history of psychiatric hospitalizations or SSI, suggests that he may be malingering or exaggerating psychotic symptoms." (Exhibit 2F/15.)

Additionally, March 1996 treatment records include a diagnosis of a history of substance abuse (Exhibit 2F/6). The record thus includes medical evidence of substance abuse. Moreover, the updated record does not document any successful completion of a substance abuse rehabilitation program by [Plaintiff]. Also striking, in an assessment dated December 2001, a Social Security Administration interviewer observes that [Plaintiff's] behavior suggests substance abuse (Exhibit 1E/3). Any mental impairment [Plaintiff] may have would thus seem to have been critically tied to his substance abuse.

> More recently, however, the report of a psychological consultative examination dated August 2003 again underscores [Plaintiff's] tendency towards malingering (Exhibit 8F). Notably, the examiner comments, "He is tangential in his speech and he is attempting to convey a bizarre combination of organicity, mental retardation and schizophrenia that generally does not exist in real life." And, "While attempting to be mentally retarded and not knowing the meanings of certain words, he is able to laugh at certain situations, not normally recognized or understood by individuals who in actuality are mentally retarded. . ." Otherwise, the examiner observes very poor cooperation by [Plaintiff] on testing, again, a circumstance adverse to [Plaintiff's] credibility. Altogether, the examiner opines that [Plaintiff's] primary diagnosis is malingering, an assessment essentially consistent with the weight of the opinion shown in the mental health treatment records.

(A.R. 13.)

In finding Plaintiff's residual functional capacity, the ALJ included no mental limitations; thus, he implicitly rejected Plaintiff's claimed mental impairment as not "severe." (A.R. 16.) Plaintiff contends that the ALJ's finding that he does not have a "severe" mental impairment is erroneous. Plaintiff further maintains that his drug and alcohol use is a symptom of his mental disease. (Joint Stip. at 7.) In addition, Plaintiff contends that his malingering is consistent with the behavioral patterns of a sociopath. (Joint Stip. at 8-12.)

In his finding, the ALJ did not accurately and fairly state the records from the CDC or the 2003 report of Dr. Donahue, an examining psychologist. While the records from the CDC and Dr. Donahue indicate that Plaintiff was malingering, they nevertheless indicate that Plaintiff was suffering from significant mental health problems. In fact, both the CDC records (Dr. Stack's June 24, 1994 evaluation and Dr. Payne's March 29, 1996 evaluation) cited by the ALJ, as well as Dr. Donahue's report, show that Plaintiff had other diagnoses of mental disorders and mental limitations, despite his malingering.

Specifically, in Dr. Stack's June 24, 1994 evaluation, she stated that Plaintiff's "child-like manner with inappropriate affect, auditory hallucinations, and a fixed delusion" seemed "to have a limited effect on his functioning." (A.R. 124.) However, she further noted that Plaintiff should receive a psychiatric reevaluation if any of his mental illness symptoms recurred. She diagnosed Plaintiff as follows: "Malingering (provisional). . . . Organic mental disorder, NOS. . . . Schizophrenia, undifferentiated, chronic. . . . Poly substance dependence. . . . Antisocial personality disorder. . . . Borderline intellectual functioning (provisional). . . . Mild mental retardation." She assessed Plaintiff with a GAF of 60, if he was malingering, and 35, if he was not malingering. (A.R. 124-25.) In addition, Dr. Stack noted that Plaintiff had taken psychiatric medications, such as Artane, Haldol, Navane, and Sinequan, and he reported hearing voices and believed he had been shot by people who thought he had assassinated John

F. Kennedy.[4]  (A.R. 123-24.)  In Dr. Payne's March 29, 1996 report, he diagnosed Plaintiff with "*[p]sychotic disorder NOS vs. malingering*," as well as a history of poly-substance abuse and rule out borderline intellectual functioning.  (A.R. 114-15; emphasis added.)

In addition, while the August 29, 2003 report of Dr. Donahue, an examining psychologist, indicates "probable" diagnoses of "Malingering. Rule out paranoid schizophrenia. [and] Rule out major depression.," it also indicates that Plaintiff is "functioning in what is believed to be the borderline range of ability," "[a]t least borderline intellectual ability," and psychosocial stressors of having a history of felony convictions and being a registered sex offender.  (A.R. 197.)  Dr. Donahue critically stated that "[t]here are some questions about whether or not [Plaintiff] is able to adequately interact with people," and if he is a sex offender, "he should not work with his potential victim class unsupervised."  (A.R. 197.)  She also found "marked" limitations in certain categories of social interaction and adaption, and noted that, although Plaintiff "was clearly malingering in memory and cognitive impairment," he has a "long-standing criminal history and is *quite sociopathic*."  (A.R. 201-03; emphasis added.)  Plaintiff's point is well-taken that malingering can be symptomatic of some mental illnesses, and the records here suggest that Plaintiff still has a "severe" mental illness in spite of malingering.  *See* Morales v. Apfel, 225 F.3d 310, 314 (3d Cir. 2000)(reversing and awarding benefits in a case where the claimant's treating doctor noted that, although the claimant was malingering, the claimant nonetheless suffered from a

---

[4] Plaintiff was born on April 20, 1968, nearly five years after Kennedy's November 22, 1963 assassination.  (A.R. 39.)

personality disorder with explosive and anti-social features, consistent with the DSM-IV).

Furthermore, the ALJ, without stating a reason, did not consider the records pertaining to Plaintiff's claimed mental impairment provided from the DMHC. In Dr. Wright's December 11, 2001 Adult Initial Assessment, Dr. Wright:  diagnosed Plaintiff with major depressive disorder, recurrent and severe, and post traumatic stress syndrome; assessed Plaintiff with a GAF of 35; and noted that Plaintiff reported that he had been hospitalized for psychiatric reasons in Norwalk and had attempted suicide several times.[5]  (A.R. 179, 183.)  These records also show that Plaintiff has taken a panoply of anti-psychotic and anti-depressant medications, including Mellaril, Cogentin, Haldol, Sinequan, Zyprexa, Doxepin, and Seroquel.  (A.R. 170, 180.)  Because the records of treating physicians are entitled to controlling weight, it was error for the ALJ to reject the opinions and observations made in these records without comment. *See* Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996)(the ALJ must defer to the treating doctor's opinion, even if controverted by another doctor, unless the ALJ makes findings setting forth specific, legitimate reasons for rejecting it that are based on substantial evidence in the record).

In addition, the ALJ's further rejection of Plaintiff's mental

---

[5] In his application papers, Plaintiff only lists "Norwalk" as a facility where he received a head x-ray in 2000, by court order. (A.R. 65.)  To the extent that any records pertaining to a psychiatric hospitalization in Norwalk clearly could bear upon the finding regarding Plaintiff's mental impairment and the Commissioner has no information to contact any such facility, Plaintiff's counsel should provide the records to the Commissioner.

impairment, because "[it seemed] to have been critically tied to his substance abuse," was improper under the governing legal standards. Under the Social Security Regulations, a claimant is not eligible to receive disability benefits if drug or alcohol addiction is a "contributing factor material to a determination of disability." 20 C.F.R. § 416.935. The "'key factor . . . in determining whether alcoholism or drug addiction is a contributing factor material to the determination of a disability'" is "whether an individual would still be found disabled if she stopped using alcohol or drugs." Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998)(citing to 20 C.F.R. § 404.1535(b)(1)).

Thus, a two-step analysis is required. First, the ALJ must evaluate which of the claimant's physical and mental limitations would remain if the claimant refrained from drug and alcohol use. Second, the ALJ must determine whether the claimant's remaining limitations would be disabling. 20 C.F.R. § 416.935(b). However, it is not proper to simply conclude that substance abuse is a contributing factor to the mental impairment without distinguishing between the substance abuse contributing to the disability and the disability remaining if the Plaintiff stopped using drugs or alcohol. Sousa, 143 F.3d at 1245 (reversing and remanding case for the ALJ to determine whether claimant's disability would have continued if she stopped using drugs and alcohol); Bustamante, 262 F.3d at 955 (ALJ improperly concluded that claimant's mental problems were the consequence of his alcohol abuse without attempting to determine the impact of his alcoholism on his other mental impairments). The ALJ's finding here fails to make this two-step analysis. Moreover, although the record contains numerous

references to Plaintiff's polysubstance abuse, the record contains no assessment from any physician specifically addressing whether Plaintiff's remaining, if any, mental limitations in the absence of Plaintiff's substance abuse would be disabling.[6]  Thus, the record should be developed on this issue.  *See* Brown v. Heckler, 713 F.2d 441, 442-43 (9th Cir. 1993)(Commissioner has an affirmative duty to develop the record, even if the claimant is represented by counsel); 20 C.F.R. §§ 404.1512(e), 416.912(e) (duty to re-contact treating physician); *see also* 20 C.F.R. §§ 404.1512a(b), 416.919a(b)(listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity or insufficiency in the evidence).

In sum, the record contains evidence indicating that Plaintiff's claimed mental impairment meets the *de minimis* threshold for finding "severity" under the Social Security regulations that the ALJ improperly characterized or failed to discuss.  Thus, the ALJ's finding that Plaintiff did not have a "severe" mental impairment constitutes reversible error.

**B.  Remand Is Required.**

Here, remand is appropriate to allow the ALJ the opportunity to correct the above errors.  *See* McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

---

[6]  Notwithstanding Plaintiff's self-serving contention that his substance abuse is a symptom of his mental disorder, the record contains no such opinion from a mental health professional.

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 19, 2005

/S/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE